Cy I. KASTER, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT NO. 625, Respondent.

No. 48647.

Supreme Court of Minnesota.

July 6, 1979.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Thomas P. Kane and T. Mitchell Willey, St. Paul, for appellant.

Richard J. Battis, St. Paul, for respondent.

Heard before PETERSON, KELLY and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.

This appeal arises from an action by appellant Cy Kaster claiming that his repeated denials for promotion within respondent school district were the result of discriminatory employment practices. The district court, after a full trial, ruled that appellant had not established a prima facie case of discrimination, entered judgment in favor of respondent, and Kaster appealed. Because we find that appellant did, in fact, demonstrate a prima facie case of discrimination which was not refuted by respondent, we reverse.

Appellant is a white, Jewish male who has been employed as a teacher by respondent school district for 24 years. Over the past 19 years, appellant has applied for numerous administrative positions within the school district but has never been recommended for promotion. In 1970, appel-

lant, concerned about his failure to be promoted, pressed the school district administrators for an explanation of his repeated rejections. Dr. Young, at that time the school district's superintendent, suggested that it may have been the result of "intangible factors."[1] Following this meeting, Dr. Young encouraged appellant to participate in an administrative intern program which was being established by the school district. The program was intended by the district to give minority applicants for administrative positions an opportunity to gain experience by holding such positions in the school district under the supervision of established personnel. According to Dr. Young, the program was supposed to be "a major thoroughfare" for recruitment of administrators in the district.

Although appellant believed that he was already qualified for a position as principal or assistant principal, he participated in the internship program thinking that it would lead to his desired promotion.

In March 1971, as part of the internship program, appellant was assigned to Mounds Junior High School, performing the duties of an assistant principal under principal Richard E. Krueger. During this period, appellant received his specialist's degree (Ph.D. equivalent) in Educational Administration from St. Thomas College.

In the fall of 1972, appellant was transferred to Monroe Junior-Senior High School, continuing in the internship program under principal Wayne Gilleland. After two years at Monroe, appellant was notified that there was no longer money available for the internship program and that he would have to return to teaching. During the three and one-half years that appellant participated in the minority internship program performing administrative duties, he received no additional salary above that to which he was normally entitled as a classroom teacher.

In the summer of 1974, appellant filed a complaint against respondent with the St.

---

1. At no time has the respondent asserted any tangible factors which played a role in appellant's failure to be promoted.

Paul Department of Human Rights, alleging religious discrimination. The department investigated the complaint and made a determination of "no probable cause."

Appellant subsequently applied for two assistant principalships within the school district. He was interviewed by a school district screening committee but was not recommended for promotion in either instance. Altogether, appellant made application for at least five administrative positions between 1970 and 1976, interviewing with the screening committee on each occasion and being rejected for every opening, despite his fine qualifications, administrative experience and outstanding recommendations.

The use of the screening committee was started by the district in the early 1960's. The committee generally consists of five to nine persons who are employed by the district at various levels, selected either by the superintendent or his deputy. The committee typically interviews each applicant for one-half hour, during which each member is expected to ask at least one question. No discussion of the applicant is permitted after the interview and the recommendation of each committee member is secret. The chairperson then prepares a summary report and presents it to the superintendent who ultimately makes the final determination. Since 1973, however, no recommendation of the screening committee has ever been disapproved by the superintendent or his deputy.

On appeal Kaster contends that the evidence introduced at trial established a prima facie case of disparate treatment, thus shifting to respondent the burden of demonstrating a legitimate nondiscriminatory reason for its actions.

In *Danz v. Jones*, 263 N.W.2d 395 (Minn.1978), we upheld a claim alleging sex discrimination, ruling that a prima facie case had been established. In so holding, we acknowledged criteria, set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *McDonnell Douglas* involved the claim of a black

employee under 42 U.S.C. § 2000e (Title VII) that his discharge and the general hiring practices of the employer were racially motivated. The Supreme Court extensively discussing the allocation of the burden of proof in a Title VII action emphasized that "* * * Title VII tolerates no racial discrimination, subtle or otherwise," 411 U.S. 801, 93 S.Ct. 1824, 36 L.Ed.2d 677, and set out criteria for establishing a prima facie case:

> "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. 802, 93 S.Ct. 1824, 36 L.Ed.2d 677. (Footnote omitted.)

The *McDonnell Douglas* test does not require any showing of direct proof of discrimination by the employer to sustain the prima facie case. The ultimate burden of proof, however, is retained by the employee. *Naraine v. Western Electric Company, Inc.,* 507 F.2d 590 (8 Cir. 1974).

The elements of the prima facie case set out in *McDonnell Douglas* may not, however, be appropriate in every case alleging discrimination in employment. 411 U.S. 802, n. 13, 93 S.Ct. 1824, 36 L.Ed.2d 677; *Danz v. Jones*, 263 N.W.2d 395, 399. *McDonnell Douglas* dealt with a job, the performance of which required the exercise of little, if any, discretion or judgment. It was a job which presumably could have been carried out equally well by anyone possessing certain minimum qualifications. In such a case, the rejection by an employer of a minority applicant with the requisite ability, coupled with the employer's ongoing search for a similarly qualified employee, raises a clear inference of discrimination and should shift to the employer the burden

of demonstrating some legitimate non-discriminatory purpose for his conduct.

█ In the case before us we are faced with a new but undoubtedly prevalent situation. Here, the position in question is an administrative one, requiring in a successful applicant a wider range of attributes than the mere satisfaction of minimum requirements. A principal or assistant must have the ability to deal with a variety of situations and handle difficult responsibilities necessary to the efficient operation of the school. Whether an applicant possesses the requisite capabilities may be difficult to perceive from objective criteria alone. Because of this difficulty, it may not be unreasonable for an employer to resort to the use of some subjective processes to evaluate potential employees. In addition, it is not uncommon for an employer to accept a number of applications from those qualified and to select one individual whom it believes would best fill the position. The rejection of the other applicants, although some of them may be members of a protected class, should not, without more, be sufficient to cause the burden to shift to the employer. See, *Olson v. Philco-Ford*, 531 F.2d 474 (10th Cir., 1976).

The potential for discriminatory practices to exist undiscovered in such a situation, however, is obvious. It being the intent of the legislature by enacting Minn.St. 363 to eliminate all discrimination in employment, however subtle, it follows that any test to determine whether a plaintiff has sustained a prima facie case of discrimination cannot be inflexible but must be tailored to fit the individual situation.

█ In the typical discrimination case as depicted in *McDonnell Douglas*, establishing a prima facie case does nothing more than raise an inference of discrimination. This is true because of the recognition that direct proof of discrimination may often be difficult, if not impossible, to demonstrate. Once this inference is raised, it is incumbent on the employer, in order to avoid liability, to rebut it by a showing of a legitimate non-discriminatory purpose.[2]

█ Reviewing the facts before us, we conclude that the appellant has met his burden. He was a member of a minority group accorded protection under Minn.St. 363, possessed more than the minimum qualifications for the position in question, and had for a number of years. The letters of recommendation from his immediate supervisors were, as far as the record indicates, superior to those of the other applicants both in terms of quantity and quality. Appellant had also acquired at least three years administrative experience during his tenure with the minority internship program, for which he was highly praised. Appellant also had more seniority than a significant number of applicants.[3]

Moreover, appellant introduced at trial statistical evidence which he claimed demonstrated a gross disparity between the percentage of Jews living in St. Paul and the percentage represented in administrative positions within the school district. The statistical data presented was limited, perhaps because of the small statistical sample, and somewhat incomplete.[4] Although the data presented would not be sufficient to sustain an action brought on the theory of

2. The employer may still be found liable in spite of its non-discriminatory justification if it can be shown that the justification is merely a pretext for discrimination. See, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668, 679 (1973).

3. The School District Code provides that for purposes of promotion, all other factors being equal, the applicant with the greatest seniority is to be preferred.

4. According to the statistics presented, Jews represent 3.2 percent of the population of St. Paul, yet only 1.2 percent of the principals and/or assistant principals are Jewish. Likewise principals and assistant principals represent 5.1 percent of all teachers in the district but Jewish principals and assistant principals represent only 2.6 percent of Jewish teachers in the district. Jewish teachers represent 2.4 percent of all teachers but fill only 1.2 percent of the administrative positions in question. Appellant failed to establish, however, the number of Jewish applicants for administrative positions or how many Jewish teachers within the district would qualified to hold such a position.

disparate impact, we believe that it is a convincing factor in determining whether appellant has raised an inference of discrimination. Finally, and perhaps most critical to our decision, is the continuous and repetitive nature of respondent's actions. He was interviewed and rejected for ten or more positions. Such repetitive actions by the respondent tend to rule out mistake or accident as an explanation for respondent's conduct and, in fact, seem to substantiate its purposefulness.

Considering the subjective procedure utilized by respondent in the selection of prospective administrators, our decision becomes even more clear. This should not be understood as a condemnation of all subjective selection procedures. We are well aware of the necessity of such procedures in making difficult employment decisions. It must be recognized, however, that any subjective procedure has within it the potential to favor applicants who are most like those doing the selecting. To avoid this, an adequate selection process should contain built-in controls to counteract any inherent problems which may exist.

An examination of the screening technique used by respondent reveals a number of deficiencies. The members of the selection committee were not instructed as to the basis on which the applicants were to evaluated.[5] The respondent seemingly placed little emphasis on the committee's review of an applicant's credentials, letters of recommendation or length of service,[6] factors which we believe have a tendency to remove some of the subjectivity from the selection procedure. Without standards and objective criteria, the committee members are left to make a determination based primarily on an impression formed during a one-half hour interview. Furthermore, no records are kept of the committee decisions except for a summary prepared by the chairperson. This summary includes the names of those recommended or not recommended by the committee but does not include any comments of the committee members. It is precisely this type of situation that maximizes the possibility of a selection being made, consciously or otherwise, on the basis of race, color, sex, religion or national origin.

There being no substantial dispute as to the operative facts in this case, we may freely review the evidence and draw our own inferences. See, *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 243 N.W.2d 302, certiorari denied, *Arms v. Watson*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976). For the reasons stated above, we believe that the evidence, taken as a whole, did raise an inference that appellant was a victim of discrimination. Following this determination, absent a showing by respondent that its actions were legitimate and non-discriminatory, liability will attach.

Therefore, our inquiry must shift to whether or not respondent has successfully demonstrated a legitimate non-discriminatory motive for its conduct. We must answer that question in the negative. Respondent has presented no evidence whatsoever to explain its repeated failure to promote appellant. The record is devoid of testimony of members of past screening committees that interviewed appellant, nor was there any testimony pointing out any professional deficiencies possessed by appellant. In light of this inability of respondent to rebut the inference of discrimination raised by appellant, we must rule that respondent's continuous refusal to professionally advance appellant was the result of discrimination in violation of Minn.St. 363.-03, subd. 2. The judgment of the district

---

**5.** The district's standards for promotion are vague and subjective: § 3.6–1 of the School District Code states in part: *"Basic Consideration for Promotion* Basic to consideration for promotion shall be a record which indicates conspicuous success in present and previous assignments, interest in professional advancement, participation in activities designed to improve instruction, and good community relations."

See, *Rowe v. General Motors Corporation*, 457 F.2d 348 (5 Cir. 1972) (subjective selection process utilized by defendant held to be discriminatory).

**6.** See footnote 3, *supra*.

court is reversed and the case is remanded for a determination of appropriate relief in accordance with Minn.St. 363.14.

TODD, J., took part in the consideration or decision of this case.