**Mary DEVERICKS, Appellant,**

and

**South Dakota Commission of Human Rights,**

v.

**JOHN MORRELL & COMPANY, Appellee.**

**No. 12963.**

Supreme Court of South Dakota.

Argued Sept. 11, 1980.

Decided Oct. 15, 1980.

Jon E. Arneson, Sioux Falls, for appellant.

Thomas J. Welk of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, Ralph A. Morris of Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for appellee; William H. Nichols of Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., on brief.

DUNN, Justice.

This is an appeal from a judgment by the circuit court which reversed and vacated the order, findings of fact and conclusions

of law of the South Dakota Human Rights Commission (hereinafter Commission) and dismissed with prejudice the complaint filed with that Commission by appellant, Mary Devericks (hereinafter Devericks). The Commission had determined it had jurisdiction in the case and that appellee, John Morrell & Company (hereinafter John Morrell) was discriminating against Devericks. We affirm the circuit court.

Devericks was first hired by John Morrell on March 7, 1928. On November 18, 1948, Devericks resigned from her job because she was seven months pregnant. Her foreman listed the reason for her resignation as "[s]he would like to keep house." Devericks did not indicate to John Morrell when or if she would seek further employment. Devericks reapplied and was rehired on June 13, 1949. She was treated as a new employee and assigned the date of June 13, 1949, as her seniority date. Devericks was given menial tasks as were all new employees, receiving no credit whatsoever for her twenty years' prior service.

Until 1957 it had been an informal unwritten policy of John Morrell that pregnant employees were to voluntarily quit by the fifth month of gestation. At no time did anyone at John Morrell ever act to terminate a pregnant employee, the reason being that this policy was voluntarily complied with. An employee who had voluntarily quit due to this informal policy, who was later rehired, received seniority benefits calculated from the date of rehire. Any service prior to the voluntary quitting was forfeited.

In 1957, under a collective bargaining agreement, a new policy was instigated concerning pregnancy leave. Under this policy, a pregnant employee could take a leave and thereafter return to work without forfeiting her past service time. Her seniority date would continue as before the pregnancy. Also in 1957, a pension plan was adopted by John Morrell. This plan calculated the amount to be received under a "credited

service" formula. Under this formula, the retiree receives a certain amount for each year of service with John Morrell, but only those years from the most recent date of hiring. Therein lies the controversy. All pregnant employees, due to the informal policy, voluntarily quit. Their termination and subsequent rehiring resulted in a more recent date of hiring, thereby reducing the amount of their respective pensions.

It is urged that these acts, occurring twenty-three years prior to enactment of the South Dakota Human Relations Act of 1972 (SDCL ch. 20–13), constitute a continuing violation of that Act. Devericks claims the past practice of requiring pregnant employees to voluntarily quit results in a present and continuing discriminatory practice in violation of the Act. This violation is alleged to occur due to the "credited service" formula which fails to give credit for employment prior to a voluntary quit due to pregnancy.

The scope of review on appeals under the South Dakota Administrative Procedures Act (SDCL Ch. 1–26) is:

> [I]n reviewing the circuit court's judgment under the APA [SDCL Ch. 1–26] this court must make the same review of the administrative tribunal's action as does the circuit court under SDCL 1–26–37. Furthermore, this court must make its decision as to whether the administrative decision can be sustained unaided by a presumption that the circuit court's decision is correct.

*Piper v. Neighborhood Youth Corps*, 90 S.D. 443, 445, 241 N.W.2d 868, 869 (1976). Mindful of this consideration, we turn to the substantive issues.

The dominating issue in this case is whether John Morrell's pension plan constitutes a present and continuing violation of the South Dakota Human Relations Act of 1972. SDCL 20–13–31 requires that any complaint under that Act be filed within six months.[1] Unless Devericks shows some discriminatory act or practice in relation to

---

1. SDCL 20–13–31 provides that:

    Any complaint filed under this chapter shall be so filed within six months after the

alleged discriminatory or unfair practice occurred.

terms or conditions of employment taken within the previous six months, it is improper for the commission to assume jurisdiction.

Does a pension plan, which is entirely neutral in its operation, constitute a present and continuing violation of the South Dakota Human Relations Act of 1972 merely because a past act of discrimination affects the benefits received? We hold that it does not.

*United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), requires that we reject the argument that this is a present and continuing violation of the Act. In *Evans*, Carolyn J. Evans was employed by United as a flight attendant from 1966 to 1968, at which time she married and was forced to resign under a "no marriage" rule. By 1972, Evans had been rehired but was not given credit for her prior service. Evans brought suit alleging sex discrimination under Title VII of the Civil Rights Act of 1964, the federal counterpart of the South Dakota Human Relations Act of 1972. Evans alleged that this past act of discrimination constituted a present and continuing violation of Title VII.[2] The United States Supreme Court found this not to be a present and continuing violation stating:

A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute r`evant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

431 U.S. at 558, 97 S.Ct. at 1889, 52 L.Ed.2d at 578.

**2.** Evans was treated as a new employee. She received no credit for her previous service and her seniority date ran from the date of rehire. This lower seniority date affected her wages; the duration and timing of vacation; rights to retention in the event of layoffs; and rights to preferential selection of flight assignments.

**3.** In Devericks' testimony before the Commission the following exchange took place:

Unsuccessful attempts have been made to limit *Evans* to seniority claims. *Freude v. Bell Tel. Co. of Pa.*, 438 F.Supp. 1059 (E.D. Pa.1977), was such an attempt. In *Freude*, a female employee claimed that her pension checks were discriminatorily small. The pension plan in *Freude* was admittedly fair and sexually neutral. The amount received under the pension was based upon the five highest years' salaries. These salaries had been discriminatory on the basis of sex. The claimant failed to file a timely charge of discrimination based upon the salaries. In *Freude*, it was alleged that the claim was not time-barred because it constituted a continuing violation through its effect on the pension benefits. The court in extending *Evans* to pension plans stated:

[T]he receipt by plaintiff of payments received pursuant to a fair and sex neutral pension plan do [sic] not constitute a continuing violation tolling the statute even though the amount of pension payments is derived from a sex discriminatory salary scale....

... [I]t is plain that the basic holding of *Evans* is that a current nondiscriminatory policy will not revive a time-barred act of discrimination even though such policy gives present effect to the past act of discrimination.

*Freude*, supra at 1061. *Farris v. Board of Ed. of City of St. Louis*, 576 F.2d 765 (8th Cir. 1978); *Alston v. Allegheny Ludlum Steel Corp., Div., Etc.*, 449 F.Supp. 553 (W.D.Pa.1978).

Here, as in *Freude*, Devericks asserts her claim is not time-barred because it constitutes a present and continuing violation. Devericks admits the present pension plan is fair and sexually neutral.[3] It is therefore

Q. [MR. CHAIRMAN]: Do you know whether males are treated the same as females relative to the denial of credit for prior service?
A. [Devericks]: I assume they are.

Q. [MR. CHAIRMAN]: Is there any way you can tell me, ma'am in your own words, that John Morrell & Company's present policy relative to credit for past service differen-

the impact of the 1949 actions on the present pension plan which is the true gravamen of the complaint.

As was true in *Evans*, Devericks is correct in pointing out that the pension plan gives effect to a past act of discrimination. It is emphasized that this is a present and continuing violation. John Morrell's past policy regarding pregnancy does indeed have a continuing impact on Devericks' pension benefits. However, "[t]he emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists." *Evans*, 431 U.S. at 558, 97 S.Ct. at 1889, 52 L.Ed.2d at 578 (emphasis in original).

This is merely a challenge to a neutral system on the basis of a past event which has no present legal significance except the effect on the calculation of pension benefits. There can be no doubt that the pension plan is sexually neutral. The plan itself does not differentiate between male or female employees. The pension benefits are calculated from the most recent date of hire. Determination of the most recent date of hire in each case depends upon individual circumstances unrelated to the terms and policies of the pension plan.[4] A claim based on mere impact of a time-barred act is not justified. "A contrary

view would substitute a claim for seniority credit [here in relation to pension benefits] for almost every claim which is barred by limitations." *Evans*, 431 U.S. at 560, 97 S.Ct. at 1890, 52 L.Ed.2d at 580. Because the true act complained of occurred in 1949, we refuse to find any present or continuing violation from an act occurring twenty-three years prior to the enactment of the South Dakota Human Relations Act of 1972. Furthermore, pre-act discrimination cannot be redressed under this Act. *Farris*, supra. This is merely "an unfortunate event in history which has no present legal consequences." *Evans*, 431 U.S. at 558, 97 S.Ct. at 1889, 52 L.Ed.2d at 578.

Accordingly, the circuit court judgment reversing and vacating Commission's order, findings of fact, and conclusions of law and dismissing, with prejudice, appellant's complaint is affirmed.

All the Justices concur.

---

tiates or discriminates or treats a female different from a male?
A. [Devericks]: Well, right now, I would say no, because a woman that gets pregnant now, is allowed so much leave, and then when she comes back, her seniority rights are–they go on, you know, there is no break in them. But, we, me, I lost 20 years. (R. 30–31)

4. At the hearing before the Commission, evidence was introduced indicating that male employees had voluntarily quit for various reasons and returned only to be given new seniority dates. The pension benefits of these individuals will be calculated without reference to prior service.