The **MINNESOTA CHEMICAL DE-
PENDENCY ASSOCIATION,**
petitioner, Appellant,

v.

**MINNEAPOLIS COMMISSION ON
CIVIL RIGHTS, Respondent,**

**Timothy Campbell, complainant,
Respondent.**

No. 51639.

Supreme Court of Minnesota.

Sept. 25, 1981.

Rehearing Denied Nov. 13, 1981.

Van Eps & Gilmore, Warren P. Eustis and Andrew T. Shern, Minneapolis, for appellant.

Dolores C. Orey, St. Paul, for Minneapolis Commission on Civil Rights.

Jeffrey R. Anderson, St. Paul, for Campbell.

AMDAHL, Justice.

Petitioner Minnesota Chemical Dependency Association (hereinafter MCDA) appeals from an order of the district court affirming the decision of the Minneapolis Commission on Civil Rights (hereinafter commission). The commission concluded that complainant Timothy Campbell was discriminated against on the basis of affectional preference in employment. Because we find that the commission's conclusion was unsupported by substantial evidence, we reverse.

Complainant applied for the positions of Programs Coordinator and Employment Clearinghouse Coordinator with MCDA.[1] He submitted a resume and was asked to

---

1. No discrimination was alleged by complainant with regard to employment in the position of Employment Clearinghouse Coordinator.

come in for an interview. The interview was conducted by Jack Longie, Executive Secretary for MCDA, and Dagney Christiansen, a member of MCDA's Steering Committee.[2] Both interviewers knew that complainant was gay and an active member of MCDA's Gay and Lesbian Section and Legal-Legislative Committee.[3]

During the interview, complainant was asked a number of so-called "objective" questions that all interviewees were asked. In addition, however, complainant was questioned as follows:

(1) "Why do you want the job?"

(2) "We have so many things going on at one time that our work becomes strictly routine * * *. Would you have trouble fitting into this kind of setting? Someone with your energies?"

(3) "Would you be able to work on this job without doing your thing predominantly? In other words there is very little * * * individual counseling in this job or there's very little opportunity to promote a cause because there are so many multiple causes."

(4) "Your main objective, which is what?"

(5) "The one thing that bothers me about it is this, that in this position, this position that's available, it seems to be that although you have special interests or anyone that took this position would have some special interests, that this job requires someone else to carry the ball of those special interests."

(6) "Where do you see MCDA going in the long run?"

Although other applicants were asked questions in addition to the "objective" questions, none of the additional questions asked of complainant were asked of the others.

Following the initial interviews, at least twelve applicants were ranked as high as or higher than complainant. Six people were called back for a second interview, including Elizabeth Robbins; complainant, however, was not in this group.[4] Ms. Robbins was ultimately hired for the position.

The director of the Minneapolis Department of Civil Rights found that there was no reason to believe that discrimination had occurred. A review panel, however, remanded the matter to the director for the taking of additional evidence. Once again, the director found no probable cause. A second review panel reversed the director's no probable cause finding and set the matter for a hearing.

Hearings were held before a three-member panel of the commission. The commission concluded that the unique questions asked of complainant evidenced unequal treatment based on complainant's affectional preference. It found that complainant was "as qualified" as Ms. Robbins in most areas and more knowledgeable in other areas such as chemical dependency counseling. Complainant was awarded back pay, punitive damages, and attorney's fees. MCDA appealed to district court, which affirmed the decision of the commission.

On appeal to this court, MCDA contends that the decision of the commission that complainant was discriminated against on the basis of affectional preference is unsupported by substantial evidence.

 This court may conduct an independent examination of the commission's

---

**2.** A tape recorder was activated during the interview.

**3.** At the beginning of the interview, complainant asked Mr. Longie: "When's the last time that MCDA was sued?" This comment apparently arose out of a prior incident in which complainant had believed that his suggestions to the MCDA regarding proposed legislation had been unfairly rejected. One of the people whom he believed to have disregarded his suggestions was Dagney Christiansen. Following the incident, he filed a complaint with the steering committee of the MCDA. Mr. Longie informed Ms. Christiansen of this statement and indicated that he exercised "caution" throughout the interview.

**4.** The applicants' scores in the first interviews ranged between 50 and 26 on a scale of 50. Ms. Robbins' score was 40; complainant's score was 38. Of those called back for a second interview in addition to Ms. Robbins, two had scores of 50, two had scores of 45, and one had a score of 46.

decision without according special deference to the same review conducted by the district court. *See Amdahl v. County of Fillmore*, 258 N.W.2d 869, 874 (Minn.1977); *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977). If the record, when considered in its entirety does not contain substantial evidence supporting an administrative decision, the commission's ruling must be reversed. Minn.Stat. § 15.0425, subd. e (1980). *See Quinn Distributing Co. v. Quast Transfer, Inc.*, 288 Minn. 442, 446, 181 N.W.2d 696, 699 (1970).

In actions involving alleged employment discrimination, an applicant must first establish a prima facie case by raising an inference of discrimination. Once the inference is raised, the burden shifts to the prospective employer to rebut it by showing a legitimate, nondiscriminatory purpose. *Kaster v. Independent School District No. 625*, 284 N.W.2d 362, 365 (Minn.1979). If the nondiscriminatory justification given by the employer is merely a pretext, the employer may be found liable in spite of the justification. The applicant, however, must carry the ultimate burden of persuasion to show, by a preponderance of the evidence, that the reasons offered by the employer are only a pretext for discrimination. *Danz v. Jones*, 263 N.W.2d 395, 399 (1978).

We acknowledged in *Kaster* that it was reasonable, and in some instances necessary, for an employer to use subjective processes to make difficult employment decisions. 284 N.W.2d at 365–66. Objective criteria alone do not always reveal whether an applicant possesses the ability to handle difficult responsibilities. Furthermore, an employer commonly accepts a number of applications for a position and then selects the most qualified individual. Thus, the rejection of an applicant, although he is a member of a protected class, is not, without more, sufficient to shift the burden to the employer. *Id.* at 365.

MCDA's position is that the dialogue regarding complainant's gay rights activism was not discriminatory but was, instead, open and constructive. MCDA states that the interview questions were addressed to whether complainant's activism would prevent him from devoting his time and effort to all sections of the MCDA. The commission asserts, however, that the "unique" questions asked complainant evidenced unequal treatment based on complainant's affectional preference. It contends that these questions indicate that MCDA used an apparently neutral interviewing process to accomplish a discriminatory result.

Although some of the interview questions did focus on complainant's position as an advocate for special interest groups, his extensive involvement in outside activities was a legitimate source of concern for the selection committee. When advised that the programs director would have to remain neutral, complainant emphasized his sensitivity and commitment to special interest groups. He indicated that, in his opinion, neutrality might unfairly suppress these interests and that he would resign if MCDA decisions were insensitive to them.

In addition, complainant was not reluctant to discuss his activism. He acknowledged his commitment to several causes and said that he carried a double load of work in a number of fields. He also conceded that he did not know if he would be satisfied handling a routine job such as programs coordinator.

It is evident from complainant's answers that he understood that the questions were directed towards a consideration of whether he could balance competing interests and allocate effort to all the sections of MCDA. Thus, this line of questioning alone cannot establish discrimination.

Even if a prima facie case of discrimination can be inferred from the interview questions addressed to complainant, however, MCDA will not be liable if it can produce legitimate reasons for its actions that are not merely pretextual.

MCDA notes that Ms. Robbins scored two points higher than complainant in her initial evaluation. It asserts that Ms. Robbins was more qualified than complainant for the position, in part because she had more fiscal management experience. The com-

mission, however, points out that she testified that she did not particularly like fiscal management and that she had delegated all her payroll record responsibilities to the MCDA secretary.

■ Despite the commission's contentions, it should be recognized that experience in fiscal management was listed and considered as a relevant job qualification and part of a programs coordinator's responsibilities. [5] On the list of questions read to all applicants, it was noted: "One of the heaviest requirements of the position of Programs Coor. is to be knowledgeable in fiscal management and bookkeeping systems." In addition, the question regarding bookkeeping, payroll and budget planning experience was allocated a maximum of 20 points, twice the number given to the other questions. Ms. Robbins had a significant amount of experience in this area; complainant had very little. Consequently, this basis for differentiation between the two applicants is clearly legitimate.

Furthermore, as the job responsibilities of the programs director developed, they involved working with MCDA's special interest groups and writing the newsletter. Ms. Robbins' resume indicated that she possessed writing skills and experience in teaching writing. She also had a varied background in communication and skills related to interpersonal group relationships. A review of Ms. Robbins' and complainant's resumes shows that Ms. Robbins had more expertise in handling the type of responsibility inherent in the position of programs coordinator.

The commission emphasizes the fact that complainant had superior educational skills. Complainant had a Masters degree in French, while Ms. Robbins had not completed her college degree, although she had taken a number of courses. However, Mr. Longie, as MCDA interviewer, stated that educational skills were not given great weight in the selection of programs coordinator. Thus, the fact that complainant had more formal education was not particularly relevant.

The commission also considers it important that complainant had done volunteer counseling in chemical dependency. Ms. Robbins also had had some training in chemical dependency, including a 9-week course on the subject and experience on the board of directors of a halfway house for chemically dependent ex-offenders.

In addition, Ms. Robbins had significant administrative experience, especially in the development of programs and courses. On the other hand, complainant had less experience with administrative duties than with individual counseling. As the interviewers emphasized, the position of programs coordinator was considered an "administrative arm" that did not involve direct counseling of the chemically dependent.

■ No evidence has been presented that would establish a prima facie case by raising an inference that complainant was a victim of discrimination. The inquiry into complainant's involvement in several special interest groups, including those promoting gay rights, was limited to a consideration of the effect that the allocation of time and effort to such activities would have on complainant's job performance.

Even if an inference of discriminatory action had been raised, MCDA had a legitimate motive in seeking a director with administrative and management skills who

---

5. The qualifications for the position, as listed in the announcement, were:
 1. 2 years experience in chemical dependency field.
 2. Familiar with Minnesota's chemical dependency training system and continuum of care.
 3. Knowledgeable in fiscal management and bookkeeping systems.
 4. Ability to coordinate and work with task oriented committee.
 5. Organizational and supervisory abilities.
The responsibilities were outlined as follows:
 1. Monitoring of Association funds through management of bookkeeping system.
 2. Work with special task and goal-oriented committee of the Association.
 3. Assist the director in the coordination and communicative aspects of the Association.

could coordinate programs for a number of groups. A comparison of the resumes of complainant and Ms. Robbins reveals that Ms. Robbins satisfied more of the criteria listed for the position and had more experience in management and supervisory duties.

Since there is not substantial evidence in the record to support the commission's determination that complainant was discriminated against because of his affectional preference, we conclude that the decision of the trial court should be reversed.

Reversed.

WAHL, J., took no part in the consideration or decision of this case.