In the Matter of the Grievance of Marie GANNON and the Department of Labor, State of South Dakota.

No. 13368.

Supreme Court of South Dakota.

Considered On Briefs Nov. 17, 1981.

Decided Jan. 27, 1982.

Drew C. Johnson, Agency Atty., South Dakota Dept. of Labor, Unemployment Ins. Division, Aberdeen, for appellant South Dakota Dept. of Labor, Unemployment Ins. Division.

Reed C. Richards of Richards & Richards, Deadwood, for appellee Marie Gannon.

DUNN, Justice.

This is an appeal from a judgment of the circuit court which reversed and vacated

the decision of the Career Services Commission (Commission). The Commission had determined that the South Dakota Department of Labor (Department) was not discriminating against Marie Gannon (appellee) in its promotion policies. We reverse the circuit court's judgment and reinstate the decision of the Commission.

Appellee is an American Indian woman who is over forty years of age and handicapped. She has been employed in the Unemployment Division of the Job Services office in Rapid City, South Dakota for thirteen years. She was originally hired as a clerk and was promoted on several occasions to her present position of Interviewer III. One of appellee's job responsibilities included serving as the assistant manager of the Rapid City office, which is the second largest unemployment office in the state. She managed the office and five employees during her supervisor's absence.

In June of 1979, appellee's supervisor retired thus opening the position of Claims Center Manager III. Two applicants were certified by the Bureau of Personnel as being eligible for the position: appellee and Dick Waits. Waits had been an employee of the Unemployment Division for nine years, serving the last three years as Claims Center Manager II in Pierre, South Dakota. As manager of the Pierre office, Waits was responsible for two employees.

The appointing authority for the Division, Don Biegler, interviewed the two applicants on July 12, 1979. The interviews were conducted separately with different questions asked of each applicant. Some of the questions asked of appellee were: to evaluate the shortcomings of her previous supervisor, to cite suggestions to resolve personnel problems in the Rapid City office, and whether she would be interested in applying for the manager's position presently held by Waits in Pierre. Waits' interview primarily concerned his qualifications and experience and did not examine the existing problems in the Rapid City office. On July 13, 1979, Biegler announced his decision to hire Waits.

Appellee filed a grievance with the Division claiming that she was discriminated against because of her sex, race, age and handicap by not being promoted. Relief was denied. Appellee then filed a grievance with the Commission. At a hearing on the matter, Biegler testified that his decision to hire Waits was based on the following factors: Waits had three years of experience as a Manager II in Pierre; Waits had received management and leadership training in the National Guard; and that Waits was more assertive and aggressive than appellee.

Appellee introduced evidence indicating that a rumor had been circulating in the Rapid City office for a number of years prior to the retirement of her supervisor that Waits would be the successor. Appellee also introduced statistical data to indicate that women were not being promoted at the same rate as men within the Department.

The Commission found that it was a proper management decision to promote Waits, a Manager II with three years of experience to the Manager III position over appellee, an Interviewer III. The Commission held that appellee failed to substantiate her charges of discrimination and pre-selection. On appeal, the circuit court found the Commission's decision to be clearly erroneous and reversed. The court also found that appellee made a prima facie case of discrimination and was entitled to judgment in her favor in light of the statistical evidence, the pre-selection evidence and the fact that the characteristics of aggressiveness and assertiveness were factors improperly considered by Biegler in his selection criteria.

■ This court must make the same review of the administrative tribunal's action as does the circuit court under SDCL 1–26–37 in reviewing on appeal the circuit court's judgment under the South Dakota Administrative Procedures Act (SDCL ch. 1–26). *Devericks v. John Morrell & Co.*, 297 N.W.2d 325 (S.D.1980); *Application of Jack Rabbit Lines, Inc.*, 283 N.W.2d 402 (S.D. 1979). " '. . . Furthermore, this court must make its decision as to whether the admin-

istrative decision can be sustained unaided by a presumption that the circuit court's decision is correct.' " *Devericks v. John Morrell & Co., supra* at 326 quoting *Piper v. Neighborhood Youth Corps,* 90 S.D. 443, 445, 241 N.W.2d 868, 869 (1976). We may not substitute our judgment for that of the agency as to the weight of the evidence on questions of fact unless the agency's decision is affected by error of law, is clearly erroneous in light of the evidence in the entire record, or is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. SDCL 1–26–36; *Matter of South Lincoln Rural Water System,* 295 N.W.2d 743 (S.D. 1980); *Piper v. Neighborhood Youth Corps,* 90 S.D. 443, 241 N.W.2d 868 (1976).

The primary issue in this case is whether the promotion practices of the Division discriminated against appellee in violation of the South Dakota Human Relations Act of 1972. SDCL 20–13–10 provides:

It shall be an unfair or discriminatory practice for any person, because of race, color, creed, religion, sex, ancestry, or national origin, to fail or refuse to hire, to discharge an employee, or to accord adverse or unequal treatment to any person or employee with respect to application, hiring, training, apprenticeship, tenure, promotion, upgrading, compensation, layoff, or any term or condition of employment.

■ To establish a case of unlawful employment discrimination, appellee must persuade the court that she was the victim of intentional discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. *See also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In the case before us, the Department introduced evidence indicating that Waits was hired because he had three years of experience as a Manager II only one step below the Manager III position, that he received management and leadership training in the National Guard, and that he was more aggressive than appellee. Appellee, however, had not previously held a management position and her present position was three steps below the Manager III position. Based on this evidence, the Commission found that it was a proper management decision to promote Waits.

■ Appellee attempted to show that Waits was pre-selected for the Manager III position and thus, under *Burdine,* that a discriminatory reason more likely motivated the employer to promote Waits rather than herself. Evidence was introduced at the hearing to show that a rumor circulated through the Rapid City office indicating that Waits would be the new manager. The Commission, however, found that this rumor originated with Mr. Brown, the supervisor of the Manager III position, and that Mr. Brown resigned from the Department prior to the selection of Waits. Mr. Brown could not have had a significant impact on the selection of Waits, since he was no longer employed by the Division. We find that the Commission's finding of no pre-selection is not clearly erroneous.

■ Complaints were also voiced by appellee regarding the interview process. The subjective interview procedure utilized by an employer is often necessary to assist in the hiring and promotion process. "It must be recognized, however, that any subjective procedure has within it the potential to favor applicants who are most like those doing the selecting. To avoid this, an adequate selection process should contain built-in controls to counteract any inherent problems which may exist." *Kaster v. Independent School Dist. No. 625,* 284 N.W.2d 362, 366 (Minn.1979). The evidence indicates that different questions were asked of Waits and appellee, however, this evidence alone is not sufficient to prove that appellee was the victim of intentional discrimination. We would suggest, however, that a consistent interview format be utilized in the fu-

ture, for "[i]t is precisely this type of situation that maximizes the possibility of a selection being made, consciously or otherwise, on the basis of race, color, sex, religion or national origin." *Id.*

 Appellee also introduced statistical evidence at the hearing to demonstrate that women were not being promoted at the same rate as men within the Division. In *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Supreme Court recognized that statistical evidence may be competent in proving employment discrimination and in fact may be the only available avenue of proof "to uncover clandestine and covert discrimination by the employer[.]" 431 U.S. at 341 n.20, 97 S.Ct. at 1857, 52 L.Ed.2d at 418 quoting *United States v. Ironworkers Local 86*, 443 F.2d 544, 551 (9th Cir. 1971). The Supreme Court warned, however, that the usefulness of statistics depends on all of the surrounding facts and circumstances. In the case before us, the statistical evidence introduced by appellee was limited and incomplete. The statistics regarding promotion were derived from the entire Department rather than the Unemployment Division and were drawn from a very small total sample.* Statistics drawn from such a small sample are of little probative value. Cf. *Morita v. Southern Cal. Permanente Medical Group*, 541 F.2d 217 (9th Cir. 1976), cert. denied, 429 U.S. 1050, 97 S.Ct. 761, 50 L.Ed.2d 765 (1977) (sample of eight insignificant) and *State v. Whitingham Sch. Bd.*, 410 A.2d 996 (Vt.1979) (sample of twenty-eight insignificant) with *Teamsters v. United States, supra* (sample of 6,472 significant). For these reasons, the statistical evidence was not sufficient to prove that the Division's explanation of its hiring decision was unworthy of credence.

Appellee failed to demonstrate that the Division's legitimate, nondiscriminatory reasons for hiring Waits were unworthy of credence and merely a pretext for imper-

missible discrimination. We find that the Commission's decision was not clearly erroneous or affected by error of law. We, therefore, reverse the circuit court's judgment and reinstate the decision of the Commission.

All the Justices concur.

---

* Appellee introduced into evidence the following statistics. In the Department over a two-year period, 41 people applied for promotions for 11 positions. Female candidates for promotion had an 11.6% passover rate while male candidates had a 4.6% passover rate. 36.5% of the professional positions are occupied by women, whereas women are represented at the rate of 49.2% in the available labor pool.